JULIA M. SCHERMERHORN *against* THE METROPOLITAN GAS-
LIGHT COMPANY.

A gas pipe having by the negligence of the defendant been broken, so that the gas escaped into the plaintiff's cellar, and the plaintiff having discovered that there was a leakage of gas, and having called in a plumber to ascertain where the leak was, and the plumber having in looking for the leak entered the cellar with a lighted candle, whereby an explosion was caused, *Held*, that the plaintiff was not responsible for the plumber's negligence, and could recover from the defendant for the damage caused by the explosion.

APPEAL by defendants from a judgment of the general term of the Marine Court, affirming a judgment of that court: entered on the verdict of a jury.

The action was brought against the defendant for its negligence, by which a gas pipe was broken and the gas escaped into the plaintiff's house, where it came into contact with flame and exploded.

The defendant denied having been guilty of any negligence, and alleged that if any injury had been produced, it had been through the negligence of the plaintiff.

---

* On a motion for a reargument, heard before ROBINSON, VAN BRUNT and LARREMORE, JJ., a reargument was denied.

Schermerhorn v. The Metropolitan Gas Light Company.

On the trial, it appeared that the plaintiff was the owner of the house No. 67 West Fifty-second street in New York city, and that the defendant was a corporation supplying the plaintiff with gas for illuminating purposes, and that the gas was conveyed to plaintiff's house by means of pipes laid under the surface of the street. On the 8th of January, 1872, the pipe connecting the main of the defendant with the pipes in plaintiff's house became broken. The evidence on the part of the plaintiff tended to show that the break had been occasioned by the action of the frost, and that it would not have occurred had the defendant laid the pipe at a proper depth below the surface. The evidence of the defendant tended to show that the pipe was laid at a sufficient depth below the street level, and that the break had not been occasioned by the frost, but through other circumstances, for which the defendant was not liable. The evidence on both sides on this point is fully stated in the opinion.

Through this break in the pipe the gas escaped and penetrated into the plaintiff's house, where it was discovered and a plumber sent for to discover where the leak was. The plumber came, and of his own motion lighted a candle, and with it was proceeding to enter the cellar, when the explosion took place.

At the close of the case, the counsel for the defendant requested the court to charge that if the plumber was guilty of negligence, his negligence was that of the plaintiff; but this the court declined to charge, and an exception was duly taken. The plaintiff had a verdict, on which judgment was entered.

*Beardslee & Cole,* for appellant.

*Ruggles & Felt,* for respondent.

DALY, Chief Justice.—The main, though not the proximate cause of the accident, was the escape of gas into the cellar, in consequence of the breaking of the main pipe in the street, and there was sufficient in the evidence to submit the question to the jury whether the breaking of the pipe was owing to the

defendant's negligence.   A competent expert gave it as his opinion that the fracture in the pipe through which the gas escaped was caused by the action of frost, and there was nothing in the evidence to raise any serious doubt as to the correctness of his conclusion, or to indicate in my opinion any other equally probable way in which the pipe could have been fractured.   This witness, Webster, was a civil engineer who had been engaged in the practice of his profession for fifteen years. He had had an extensive experience in the laying down, alteration, repairing, and taking care of the Croton water pipes in this city, of which he had had for two years and a half the entire charge under the chief engineer.   He had laid between two and three hundred miles of such pipes, and was familiar with the action of frost upon the ground of the streets of this city. To watch with a great deal of attention the effect of the cold on the pipes was requisite in the discharge of his duties, and was his only business in the winter season as regards pipes. This, as I have said, very competent witness, testified that the average depth to which frost penetrates in the paved streets of this city is from three to four feet; that the depth to which it may penetrate will depend upon the nature of the soil; that if composed of loose rock it will penetrate very deeply; if the soil is light and sandy it will penetrate quickly; if it has to pass through sand, loam or clay, it will take a longer period to pass down, and that he had known frost to break one of the large mains of the Croton aqueduct laid four feet below the surface, with running water.

It was shown by the defendant's evidence that the general rule of the gas company is to lay their main pipes (to protect them from the frost) three and a half feet below the surface of the street.   The pipe, according to the return in the company's books, in this particular instance was laid but two feet ten inches from the surface, and, according to Mr. Schermerhorn's evidence, who took the actual measurement, it was but two feet and seven and three-eighths inches, and there was nothing to show that it could not have been laid deeper; nor could the president of the company give any reason why it was not put down to the customary depth.   With the fact that the average

depth to which frost penetrates is from three to four feet; that the general rule of the company is to lay their pipes three and a half feet below the surface, which would be about the average limit of the penetration of frost; that they did not do so in this instance by eight and three-eighths inches, or more than two-thirds of a foot; and as there was evidence that the ground was frozen down to the pipe, a question was fairly raised whether the breaking or fracture of the pipe was not owing to the action of frost, and attributable to the circumstance that the pipe was not laid sufficiently deep beneath the surface.

Mr. Webster testified that he supposed that the cause of the fracture was frost. He said, "I should suppose, from the examination that I made, that the street had been originally filled in, and the freezing had lifted the pipe from the broken rocks and broke it in letting it down." This was his opinion as an expert, and it was strongly corroborated by the testimony; for it was shown by the defendant's witnesses that the earth below the pipe was soft and loose; that there was a weight of heavy stones immediately over the pipe, that came very near the surface, there being above them but three inches of sand and the paving stones; that the break was in the middle of the pipe; that the earth was soft "just where the break" occurred, and that one of the large stones lay in the crack on the top of the pipe, showing that it was not only possible, but highly probable that the accident occurred exactly in the way suggested by Mr. Webster.

Some stress is laid upon the circumstance that the loose and soft earth beneath the pipe was where the sewer connection was made with the house, or, as the defendant's workman expressed it, that the sewer connection came into the cellar about the place where the break was, the break being directly over the sewer connection, and that the ground there was loose and had not been packed. This evidence was given upon the assumption that the sewer connection was made after the gas pipe was laid; but this was not shown and cannot be assumed to have been the fact. This evidence, moreover, was entirely for the consideration of the jury, for these witnesses were contradicted upon a very material point, whether the ground was

frozen down to the pipe. One of them testified that the ground was frozen about two feet two or three inches below the surface, and that the pipe was three feet below the surface, indicating that it was probably beyond the action of the frost. He said that the ground was dug up, but that he did not look at the sewer connection in the cellar of the house, and could not tell in what portion of the cellar the sewer came in. He had undoubtedly his theory of the cause of the breaking of the pipe, and so had his fellow-workman Oldenburgh, who also testified that the ground was frozen but two feet two or three inches deep. That theory evidently was what the defendant's counsel has urged upon this appeal; that in connecting the sewer with the building, the earth was left loose and unpacked immediately around the gas pipe, and that the pressure of the heavy weight of the stones above caused the pipe to break. In other words, that the negligence which was the cause of the breaking of the pipe, was the negligence of those who connected the sewer with the house, and that the frost had nothing whatever to do with the accident.

The main gas pipe was laid in 52d street in 1868, and the foreman of the defendant, who laid it, was examined. He testified that he never piled stones on the top of any of the pipes; that he generally put dirt next to the pipe *when he had it*, and then stone; and that he laid the main in this instance in the same way; that he laid the pipe, but was not in the defendant's service when the street was dug up.

One of the workmen above referred to testified that the ground was frozen " pretty near down to the pipe," but that around the pipe it was not frozen, and the ground was soft. The other was asked if it was frozen down as far as the gas pipe, and he answered that there was an inch and a half or two inches of soft ground, and that the ground around the pipe was loose and soft. Now Mr. Schermerhorn testified that he saw the ground and the condition of the stone around the pipe after these workmen had dug down to it, and that the pipe was *resting on stones* which was a direct contradiction of the statement of these witnesses. It was for the jury therefore to determine whether his or their statement was the more reliable;

and even if their statement had been true, Mr. Webster's theory or conclusion as to the cause of the accident may have been the correct one, that " the freezing had lifted the pipe from the broken rocks and broke it, in letting it down," the force exerted by frost being among the most powerful of physical agents. If the frost would lift the iron pipe, and let it down again, the earth around the pipe might very well in consequence of that movement be disengaged to the limited extent stated by their workman, and present the loose and soft appearance immediately around the pipe described by them. The action of cold and heat is quite adequate to cause just such a movement of an iron tubular body so placed, and to crack or fracture it. in the way Mr. Webster supposed the accident occurred, and is in fact a much more probable way of accounting for the accident, than to suppose that it was caused by the gradual pressure of a heavy weight of stone from above, exerted from the time when the connection with the sewer was made, which must have been more than three years before; for the house was finished when the plaintiff purchased it November 17, 1868, and the gas pipe was laid according to the defendant's testimony in May of that year, being three years and eight months before the accident. There was therefore, as I have said, sufficient in the testimony to submit the question to the jury, whether the accident was not the result of the defendant's negligence in not laying its main pipe in this instance the usual depth, to protect it from ordinary action of frost. That point was submitted to the jury who have found against the defendant, and their finding upon that ground cannot be disturbed.

The remaining question is, whether there was co-operating negligence on the part of the plaintiff. I think it very questionable whether a case of negligence was made out on the part of the gas fitter. He had been a gas fitter for seven years, and had served his time to the business. When called in by the plaintiff's husband to ascertain where the gas was leaking, he examined the gas fixtures in the basement, when he said the smell of gas was not strong enough to do any harm with a light, and that he had no reason to suppose then that it was dangerous

to light one.    That he was accustomed, when examining to ascertain a leakage of gas, to judge by the smell whether it was safe to light a candle, and ordinarily relied upon his nose when he went where gas was escaping, and did so upon this occasion. Finding, after the examination of the basement, that there was no leak there, he took a lighted candle, it being then about five o'clock in the afternoon, to go into the cellar, where he could not go without a light, to examine the meter, to see if there was any leak there, and the moment he opened the door which led from the basement hall to the cellar, the explosion took place, which caused the injury.    He opened the door, says Mr. Schermerhorn, and the explosion took place instantaneously.    In *Larmen* v. *The Albany Gas Light Co.* (44 N. Y. 459), the company were notified that a cellar was full of gas, and they sent one of their laborers, who went down into the cellar and lighted a match, which caused the explosion.    The company were justly regarded as responsible, as the lighting of a match by their servant in a cellar filled with explosive gas showed a want of ordinary care and prudence, and if their agent was incompetent and ignorant of the explosive nature of gas, it was an act of negligence on the part of the company, after the information they had received, to send such a person without instructing him properly.    This is not such a case.    To hold that the gas fitter here did not exercise ordinary care and prudence, would be equivalent to holding that he was bound to know that it might be dangerous to open the cellar door with a lighted candle in his hand, for this was all that he did, and I doubt, at least, if the circumstances would warrant such a conclusion as a matter of law.    But it is not necessary to determine that question, for the gas fitter was not the plaintiff's servant or agent, so as to make her answerable for an act of negligence by him. The plaintiff's husband, finding a smell of gas pervading the house, sent for the nearest gas fitter, that he might ascertain where the leak was, and if the gas fitter acted negligently in the discharge of his calling, his negligence is not an act for which the plaintiff or her husband ought to be held responsible. The loss and injury which the plaintiff sustained was the result of the negligence of the gas fitter and the gas company, the one

being the proximate and the other the main cause of the explosion, and she was entitled to hold them both responsible for what occurred. It was the gas fitter's negligence that ·co-operated with the negligence of the defendant in producing the accident ; for what the plaintiff, or rather her husband, did— the sending for a gas fitter when he found that the gas was escaping—was not a negligent, but a prudent, act. In *Burrows* v. *The March Gas &c. Co.* (E. L. R. Exch. vol. 5, p. 69), the plaintiff ordered from the gas company a new meter, and after it was fixed, he requested a gas fitter, who was at work on the internal gas fittings in the premises, to tell the company to supply a fresh service pipe from the main to the meter. They did so, but the pipe was defective, having a hole in it. The company had the gas turned on at an earlier hour than usual, with the view of testing the sufficiency of the pipe. Immediately after it was turned on, the gas began to escape into the plaintiff's shop, and a workman of the gas fitter, who was at work in an upper room, upon being informed that the gas was escaping below, went down with a lighted candle in his hand to see whether the gas was escaping from the fittings supplied by his master, and immediately upon his entering the shop, the explosion took place, which caused the injury for which the action was brought against the company. It was held that the workman, whose act was the proximate cause of the explosion, was not the servant of the plaintiff; that the owner of premises is not responsible for the negligence of independent tradesmen whom he employs, or their workmen, so as to make their negligence contributory negligence on his part; that it did not affect the plaintiff's right to recover against the company that theirs and the gas fitter's joint negligence contributed to produce the accident. That if a man sustains an injury from the separate negligence of two persons employed upon his premises to do two separate things, he may maintain an action against both or either ; that it was not a case of contributory negligence, and that the company were liable to the plaintiff for the injury he had sustained. This decision appears to me to cover all that there is in the present case upon the question of contributory negligence, and it is sufficient to refer to it, and

to the reasons there given, as a conclusive answer to the claim set up in this appeal, that the present case is one of contributory or co-operating negligence. It is wholly groundless, and the judgment should be affirmed.

LOEW and J. F. DALY, JJ., concurred.

Judgment affirmed.*

---

* A motion for leave to carry the case to the Court of Appeals was afterwards heard before ROBINSON, LARREMORE and VAN BRUNT, JJ., and the motion denied.